**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **RONALD EARL STEPHENS and** ) | Case No. 11-31062 |
| **LISA MARIE STEPHENS,** ) | |
| Debtors. ) | |
| ) | Chapter 13 |
| ) | |
| **RONALD EARL STEPHENS and** ) | |
| **LISA MARIE STEPHENS,** ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Adv. No. 11-3302 |
| ) | |
| **REGIONS BANK,** ) | |
| Defendant. ) | |

## O P I N I O N

In this adversary proceeding, the Debtors, Ronald and Lisa Stephens ("Debtors"), seek to avoid the second mortgage on their home held by Regions Bank ("Regions Bank"), alleging the amount owing on the first mortgage to Wells Fargo Bank, N.A. ("Wells Fargo") exceeds the value of their property. Regions Bank has filed a motion for summary judgment alleging that, as a matter of law, the Debtors cannot succeed in avoiding Regions Bank's mortgage because the first mortgage to Wells Fargo only encumbered the interest of Ronald Stephens, and not the interest of Lisa Stephens.

The parties agree there are no disputed issues of fact. In January of 2004, Ronald Stephens received a warranty deed to the property located at 1517 Ballyvaughn Court, Greenville, Illinois (the "Property"). The warranty deed was recorded on January 13, 2004, in the Office of the Recorder of Bond County, Illinois. Under this warranty deed, Ronald Stephens was the sole owner of the Property.

On January 28, 2005, Ronald and Lisa Stephens executed and delivered to "Ron Stephens and Lisa M. Stephens, husband and wife, not as Tenants in Common, but in Joint Tenancy," a quitclaim deed to the property. Under this quitclaim deed, Ronald and Lisa Stephens became owners of the Property as joint tenants. Also on January 28, 2005, Ronald and Lisa Stephens signed a promissory note and mortgage with Wells Fargo in the amount of $445,000. The promissory note does not define the term "Borrower," but Ronald and Lisa Stephens each signed on lines designated for a "Borrower." Ronald's typewritten name appears beneath his signature line, but there is no typewritten name beneath Lisa's signature. The note contains a provision stating that "[i]f one or more persons signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed." The note also contains the following provision referring to the mortgage:

> This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. . . .

On the same date, January 28, 2005, the Debtors executed a mortgage in favor of Wells Fargo to secure the payment of the note. The definitions section of the mortgage named "Ron Stephens, a married person" as the "Borrower."

Both Ronald and Lisa initialed each page of the mortgage. At the end of the mortgage, both Ronald and Lisa signed on lines designated for a "Borrower," although under Ronald's signature line, his typewritten name appears while no typewritten name appears below the line containing Lisa's signature. Additionally, in the acknowledgment, Lisa's name is handwritten in after Ronald's typewritten name, and her signature is notarized. The mortgage defines the "Note" as "the

promissory note signed by Borrower and dated January 28, 2005" in the amount of $445,000.

Attached to the mortgage is a "Fixed/Adjustable Rate Rider" also dated January 28, 2005.[1] The rider provides:

> THIS FIXED/ADJUSTABLE RATE RIDER is made this 28TH day of JANUARY, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to WELLS FARGO BANK, N.A. ("Lender") of the same date and covering the property described in the Security Instrument . . . .

Both Ronald and Lisa initialed each page of the rider and signed the rider as borrowers, although Ronald's typewritten name appears under his signature line, while Lisa's does not.

In April 2006, the Debtors borrowed $91,727.85 from Regions Bank and executed a promissory note for that amount. They also executed a second mortgage to secure the loan with Regions Bank in which both Ronald and Lisa were included in the mortgage definitions as "Grantors." Both signed the Regions mortgage as grantors.

On May 6, 2011, the Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code. On Schedule B, the Debtors valued their residence at $310,000, and on Schedule D, the Debtors listed Wells Fargo as having a claim of $411,000 secured by its first mortgage. The Debtors also listed Regions Bank on Schedule D as holding a claim for $71,000. Subsequently, Wells Fargo filed a proof of claim in the amount of $400,670.40 as secured by the first mortgage on the Debtors' residence, and Regions Bank filed a proof of claim in the amount of $75,865.28 as secured by the second mortgage on the Debtors' residence. The Debtors' Chapter 13 plan, which was confirmed on September 12, 2011, provides for avoidance of Regions Bank's lien as wholly

---

[1] This Court notes that rider does not appear in the summary judgment evidence submitted by the parties, but was attached to Wells Fargo's claim, Claim No. 14-1, filed in the claims register for the case on June 30, 2012, and discovered through this Court's review of the record. Under Federal Rule of Civil Procedure 56(c)(3), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, this Court may consider other materials in the record before it in determining whether summary judgment is appropriate. FED. R. CIV. P. 56(c)(3).

unsecured.

On August 16, 2011, the Debtors filed an adversary complaint against Regions Bank, alleging that Regions Bank's junior mortgage on the Property should be avoided under § 506(d) of the Bankruptcy Code because the amount owed on the senior mortgage to Wells Fargo exceeds the value of the Property.  Regions Bank filed a motion for summary judgment, alleging that the Debtors cannot succeed on their complaint as a matter of law because the first mortgage with Wells Fargo is effective only to encumber Ronald Stephens' undivided interest in the Property and does not encumber Lisa Stephens' interest, thus leaving the value of her half interest of $155,000 to secure the mortgage held by Regions Bank.  Specifically, Regions Bank asserts that the first mortgage is not effective to encumber Lisa's interest because, although she signed the mortgage, she is not named as a "Borrower" in the definitions section of the mortgage.

The Debtors acknowledge that Lisa was not named in the body of the Wells Fargo mortgage as a "Borrower," but assert nonetheless that she did execute the mortgage as a borrower as evidenced by the fact that on the mortgage, her signature appears on a line for a "Borrower" and that her signature was duly notarized.  The Debtors also point out that, on the same day, Lisa also signed the promissory note with Wells Fargo as a "Borrower" and assert that the promissory note and the mortgage must be read together.

Summary judgment is appropriate where the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).  If there are no material facts in dispute, and only a purely legal question remains to be decided by the court, then granting summary judgment is appropriate. *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir. 1995), *cert. denied*,

516 U.S. 1045, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, if otherwise appropriate, summary judgment may be entered for a nonmoving party. *See* FED. R. CIV. P. 56; 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed.).

Illinois contract law governs this case. Under Illinois law, the meaning of a written contract is ordinarily a question of law and not one of fact. *Lenzi v. Morkin*, 103 Ill.2d 290, 293, 469 N.E.2d 178 (1984). In the absence of any material questions of fact, a court may independently construe a contract. *Ancraft Products Co. v. Universal Oil Products Co., Inc.*, 100 Ill.App.3d 694, 697-98, 427 N.E.2d 585 (Ill.App. 1 Dist. 1981); *Mazanek v. Rockford Drop Forge Co.*, 98 Ill.App.3d 956, 959, 424 N.E.2d 1271 (Ill.App. 2 Dist. 1981). The court's objective when interpreting a contract is to give effect to the intention of the parties, which must be ascertained by the language utilized in the contract itself and not by the construction placed upon it by the parties. *Lenzi*, 103 Ill.2d at 293. A contract's meaning must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language. *Johnstowne Centre Partnership v. Chin*, 99 Ill.2d 284, 287-88, 458 N.E.2d 480 (1983). Extrinsic evidence may be introduced to explain the meaning of an ambiguous contract provision, but a provision is not rendered ambiguous simply because the parties do not agree on its meaning. *Id.* at 288.

The general rule in Illinois is when a note and mortgage are made at the same time and as part of the same transaction, they are ordinarily to be read and construed as constituting a single instrument, especially where they mutually refer to one another. *Straus v. Anderson*, 366 Ill. 426,

9 N.E.2d 205 (1937); *Chicago Title & Trust Co. v. Robin*, 361 Ill. 261, 198 N.E. 4 (1935). However, the mortgage and accompanying note constitute separate contracts, and any provision in the mortgage not found in the note itself is not part of the note and does not affect the personal liability of the maker of the note, unless the note specifically refers to the particular clause in the mortgage and adopts it as part of the note by reference. *See Affronti v. Bodine*, 155 Ill.App.3d 755, 508 N.E.2d 500 (Ill.App. 2 Dist. 1987).

Regions Bank relies primarily on *In re Wirth*, 355 B.R. 60 (N.D.Ill. 2005), an opinion from the District Court for the Northern District of Illinois applying Illinois law, arguing its facts are analogous to the facts in the present case. In *Wirth*, the District Court for the Northern District of Illinois affirmed the bankruptcy court's determination that a party who was not named in a mortgage as a borrower but signed the mortgage did not encumber his interest in jointly owned property. The debtor, Paul Wirth, filed for relief under Chapter 7 of the Bankruptcy Code. Prior to filing for bankruptcy relief, Wirth and his then-wife, Marilyn Williams, had executed two mortgages on a property in which they each owned a half interest. The first mortgage with MERS defined "Borrower" as "MARILYN MARCIA WILLIAMS, a single person," and stated that "Borrower is the mortgagor under this Security Instrument." Wirth signed on a line designated for a "Borrower;" however, his name was neither printed on the contract nor notarized. In the second mortgage, the "Borrower" was again defined as "MARILYN MARCIA WILLIAMS, A SINGLE WOMAN." Williams signed as "Mortgagor" and Wirth signed above a signature line stating, "Paul Wirth Signing For [sic] the Sole Purpose of Waiving Homestead Rights."

After Wirth filed bankruptcy, the Chapter 7 trustee moved to sell Wirth's interest in the property free and clear of the mortgages. The trustee argued that the mortgages attached only to Williams's one-half interest because she alone was identified as the "Borrower" in both mortgage

6

documents. The bankruptcy court found that only Williams qualified as a "Borrower" under the express terms of the mortgage, and the district court affirmed, noting that there was no indication that Wirth, whose name did not appear anywhere in the contract, was a party to that agreement. The district court stated:

> [w]here a third party merely annexes his name to a contract in the body of which he is not mentioned, and which is a complete contract between other parties signing it and mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract, his signature in such case being only an expression of assent to the act of the parties in making the contract.

*Wirth*, 355 B.R. at 63-64 (citing *Harman Co. v. Kastor*, 202 Ill.App. 9 (1st Dist. 1916)). The *Wirth* opinion does not indicate whether Wirth signed the promissory notes that accompanied the mortgages.

Courts from other jurisdictions have reached similar conclusions as the district court in *Wirth*. *See In re Gilchrist*, 444 B.R. 343 (Bankr.E.D.Ky. 2010) (concluding mortgage lender did not have valid lien against husband's interest in real property that was the subject of mortgage executed by both himself and his wife, where husband did not sign the promissory note, and there was nothing in the body of the mortgage that sufficiently identified husband as "grantor" or explained why he had signed, despite the fact that husband as well as wife initialed all but three pages of the mortgage, signed on a line designated "Borrower" and had his signature authenticated by a notary public); *see also In re Crouch*, 2011 WL 3608095, 2 (E.D.Ky. 2011) (affirming bankruptcy court's decision that mortgage was defective as to wife where wife, who did not sign the note, signed mortgage as "borrower" but was not defined as a borrower in the body of the document; the reference to wife in the legal description of the property and a truth in lending disclosure statement executed by both husband and wife did not constitute sufficient identification under Kentucky law); *In re Padgitt*, 2008 WL 4191517, 2-3 (Bankr.E.D.Ky. 2008) (concluding debtor wife may avoid bank's lien and

7

preserve it for the benefit of her bankruptcy estate where only the debtor husband executed the promissory note and there was nothing in the body of the mortgage to identify her, and the mortgage was completely silent as to the reason she executed it despite the fact that she signed on a line designated "Borrower," acknowledged the mortgage, and initialed, along with her husband, every page of the mortgage); *In re Wallace*, 2007 WL 6510864 (Bankr.S.D.Ohio 2007) (concluding that, under Ohio law, a mortgage does not encumber a spouse's one-half interest in real property if the mortgage, although signed and acknowledged by the spouse, does not otherwise reference the spouse and the spouse was not a party to the promissory note).

In the case currently before this Court, there are several significant factual differences that distinguish it from the facts in *Wirth*. First, although the definitions section of the mortgage defines the "Borrower" as "RON STEPHENS, A MARRIED PERSON," the rider, also executed on the same date, and which is incorporated into and deemed to amend and supplement the mortgage, alters the definition of the term "Borrower" to the "undersigned ("Borrower")" on the rider. As the "undersigned ("Borrower")" on the rider includes Lisa, she is therefore a "Borrower" by virtue of the clear and unambiguous language of the rider. Above the signature block, the rider provides, "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider." Thus, the clear and unambiguous language of the rider evidences Lisa's intent to be included as a "Borrower" mortgaging her interest in the property, as under generally recognized tenets of contract law, it is inferred that she read the rider and understood its terms before signing the document. *See In re Foster*, 448 B.R. 914, 921 (Bankr.S.D.Ohio 2011), *aff'd*, 458 B.R. 391 (6th Cir.BAP 2011). In the *Wirth* case, the only definition of "Borrower" was found in the mortgage; there was no rider involved in that case to shed any further light on the husband's intent in signing the mortgage.

Additionally, in the case before this Court, Lisa also signed the promissory note, which

unambiguously provides for the personal liability of all signers of the note.  *Wirth* and the cases following *Wirth*, all involved spouses who were not included in the definition of "Borrower" who signed the mortgages but did not sign the promissory notes.  Given that under Illinois law, a note and mortgage that are made at the same time and as part of the same transaction are ordinarily to be read and construed as constituting a single instrument, especially where they mutually refer to one another, this Court finds this is further evidence of Lisa's intent to mortgage her interest in the Property to secure the note on which she is personally liable.

Based on the foregoing, it is clear that the mortgage dated January 28, 2005, as amended by the rider, also dated January 28, 2005, encumbers Lisa's one-half interest in the Property, leaving no equity to support Regions Bank's second mortgage. Regions Bank's motion for summary judgment is denied.  Accordingly, there being no further issues for resolution in the case,  judgment will be entered in favor of the DEBTORS on their complaint to avoid the lien of Regions Bank.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  See Order entered this day.

ENTERED: September 17, 2012

  
William V. Altenberger  
UNITED STATES BANKRUPTCY JUDGE